Argued January 8, affirmed February 19, 1969

GUDELJ ET AL, *Respondents, v.* SUNDBERG ET UX,
*Appellants.*

450 P. 2d 756

*Walter H. Sweek,* Portland, argued the cause for appellants. With him on the brief were Vergeer, Samuels, Cavenaugh & Roehr, Portland.

*Carrell F. Bradley,* Hillsboro, argued the cause for respondents. With him on the brief were Robert W. Redding and Schwenn, Bradley & Batchelor, Hillsboro.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, DENECKE and LANGTRY, Justices.

DENECKE, J.

This is a quiet title suit in which plaintiffs successfully established title by adverse possession.

The plaintiff Teufel owns rural land lying to the east of the property of the defendants. He bought it in 1963 from the plaintiff Gudelj who had the property since 1936. There is a barbed wire fence between the two properties. When a survey was made for the defendants in 1967 it was found that the surveyed boundary was east of the fence except for a short distance in the northerly part of the property. Most important, the sole, or certainly the principal, water supply for plaintiffs' land is a spring which lies east of the fence line but west of the surveyed line. The fence makes an obvious jog to the west in order to swing around the west side of the spring.

No findings of fact were made by the trial court. It appears upon a de novo review that it is probable that in the early 1920's a fence was moved or placed on the west side of the spring as an accommodation by the · owner of the west property to the owner of the east property. Thus, the original entry by the plaintiffs' predecessor was permissive and not hostile and would not amount to adverse possession.

■ In order for the plaintiffs to prevail they must prove that subsequent to the initial permissive use their possession or that of their predecessors became adverse. An accurate statement of the law is made in *Southern Pacific Co. v. City and County of San Francisco*, 62 Cal2d 50, 56, 41 Cal Rptr 79, 396 P2d 383 (1964):

> "* * * Thus one who uses land with the consent of the owner may effect an ouster for purposes of adverse possession by unqualified and definite renunciation of subordination to the owner even though the character of use to which he puts the property after renunciation may be identical to that contemplated by the parties upon entry. However, such renunciation must be of sufficient clarity to put the owner on notice that subsequent possession is adverse to his title, for the very essence of the requirement of ouster is *notice*. * * *"

We have recognized this general principle in different fact situations. *Coquille Mill & Mercantile Co. v. Johnson*, 52 Or 547, 552, 98 P 132 (1908) (tenant v. former landlord); *Parrish v. Minturn*, 234 Or 475, 479, 382 P2d 861 (1963) (grantee v. grantor). Accord, 4 Tiffany, Real Property (3d ed), 427, § 1142.

■ We find that the plaintiffs have proved that subsequent to the original permissive use the use changed to adverse and notorious and was of such character as to establish plaintiffs' title by adverse possession.

The strongest evidence is that of Mrs. Kaufman, who in 1941, acquired the property and sold it to the defendants in 1955. She testified that the plaintiff Gudelj exclusively used the property east of the fence, including the spring, and she and her husband constantly repaired the fence in order to keep their cattle

on the west side of the fence. She stated that she considered that she and her husband owned the property west of the fence and Gudelj owned to the east of it.

Gudelj testified that he started improving the spring in 1937 or 1938. He further testified that the Kaufmans asked him on one occasion if they could pasture some cattle east of the fence and they did so and paid him rent for so doing.

Affirmed.